### Rancho Bonito Land and Live Stock Company v. William F. North.

#### No. 665.   Decided May 30, 1898.

**1.  Breach of Warranty—Eviction.**

Where the vendee already owns the superior title to land conveyed to him with covenant of warranty, there being no eviction, there is no such breach of the warranty as will support an action on the covenant. (Pp. 74-76.)

**2.  Same—Equitable Action for Mistake—Suit Against Remote Vendor.**

Vendees to whom were conveyed with warranty of title lands of which the boundaries conflicted with those of older surveys which they already owned, conveyed all the lands in question to plaintiff, who then sued such remote vendor for breach of warranty on the part so in conflict. Held, that if the first vendee might have maintained an equitable action independent of the warranty, based upon mistake, etc., such action did not pass to his vendee, and action upon the warranty could not be maintained by such vendee because there was no eviction. (Pp. 74-76.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Travis County.

*Ward & James,* for appellant.—(1) When land is sold and accurately described in a warranty deed by metes and bounds which embrace the number of acres purchased, and it is found that a portion of the land described is embraced within the limits of an older and superior grant, such failure of title constitutes a breach of the warranty contained in the conveyance.  (2) Where a recovery is sought for a breach of warranty of title to land, it is enough to show that superior titles had issued for the amount of deficiency, before the sale and the delivery of the deed, which were outstanding against the vendor at the time of and since his sale and the execution of his covenant of warranty.  (3) An actual eviction is not necessary to enable a purchaser of land to sue upon a covenant of warranty to recover purchase money, it being sufficient if he can show that there was a superior outstanding title of which he had no notice at the time of his purchase.  (4)  The covenant of general warranty provided for in article 628 of the Revised Statutes of Texas, binds the grantor to "warrant and forever defend" the title to the grantee, "his heirs and assigns."  This obligation is continuous and is a covenant running with the land, which accompanies all conveyances of the same, and passes to each successive purchaser. · Doyle v. Hord, 67 Texas, 621; Groesbeck v. Harris, 82 Texas, 411; Flaniken v. Neal, 67 Texas, 629; Peck v. Hensley, 20 Texas, 673; Little v. Allen, 56 Texas, 136; Clark v. Mumford, 62 Texas, 535; White v. Holley, 3 Texas Civ. App., 590; Johns v. Hardin, 81 Texas, 41; McCreary v. Douglass, 5 Texas Civ. App., 492; Bellamy v. McCarthy, 75 Texas, 294; Maverick v. Routh, 7 Texas Civ. App., 670.

(1)  Where land has been purchased and a deed of conveyance executed, with a covenant of general warranty, it is not necessary that there should have been any actual eviction to entitle the vendee to sue for a

breach of the covenant. He may yield to a title which is paramount, and which he is satisfied will ultimately prevail, without losing his remedy on his covenant, but he must assume the burden of proof and establish the adverse title to which he has yielded. (2) If the covenantee yields to a paramount title, the covenant is then broken and limitation only begins to run from that time. (3) The assignee who is in possession, at the time of the breach, of the land sold and warranted by his remote warrantor, is entitled to sue upon the covenant of warranty. (4) Whether land be sold and conveyed in bulk or by the acre by warranty deed, if a part of the land so sold is found to be held by an adverse title which is paramount and superior to that of the vendor, then a breach of warranty results, and the vendee can recover upon his covenant of warranty, notwithstanding the words "more or less" are inserted in the deed. (5) When land has been sold and conveyed by warranty deed, and the title fails as to a part thereof, actual eviction or surrender of possession is not necessary before the vendee can maintain his action upon the covenant of warranty, but suit can be maintained for a breach of the warranty by showing a superior outstanding title of which the purchaser had no notice; and this is true even though the purchaser discovers that this paramount title is in himself and yields to such superior claim. Bellamy v. McCarthy, 75 Texas, 293; Peck v. Hensley, 20 Texas, 674; Cummins v. Kennedy, 14 Am. Dec., 52; Tied. Real Property, sec. 860; Gilmer v. Railway, 24 Cent. Law Jour., 85; 3 Washb. Real Estate Law, sec. 850.

*Walton & Hill,* for appellee.—The finding of the court, that plaintiff showed no cause of action, is the law of the facts. Jones v. Paul, 59 Texas, 45; Rich v. Ferguson, 45 Texas, 398; Daughtrey v. Knolle, 44 Texas, 455; Peck v. Hensley, 20 Texas, 678.

DENMAN, ASSOCIATE JUSTICE.—The Court of Civil Appeals have certified to this court the following explanatory statement and questions:

"This suit was brought by the appellant, the Rancho Bonito Land and Live Stock Company, against the appellee, William F. North, for $917.68, on account of alleged breach of covenant of warranty in a deed executed by North to Maddox Bros. & Anderson to the Jane Williams survey in Menard County, described in the deed as 1280 acres of land, and the Thomas R. Webb survey in Menard County, described in the deed as 640 acres of land, the deed of date July 15, 1884, containing a covenant of general warranty of title to the land, alleged to have been sold by the acre at $2 per acre. It is alleged that the covenant of warranty is broken by the fact that North did not own the fee simple title to all the land conveyed by his deed; that 237.84 acres of the Jane Williams survey were in conflict with older patented surveys, and that 221 acres of the Thomas R. Webb survey were in conflict with older patented surveys.

"The Jane Williams and Thomas R. Webb surveys of 1280 and 640 acres respectively, were, as alleged, conveyed by North on July 15, 1884, to F. M. Maddox, John W. Maddox, and C. E. Anderson by deed with covenant of general warranty, and F. M. and John W. Maddox and C. E. Anderson conveyed the same land by general warranty deed August 1, 1885, to the plaintiff. All the land is of the same value per acre. There was a conflict, as alleged, with older valid surveys, patented to other parties.

"At the time of the conveyance by North to F. M. and John W. Maddox and C. E. Anderson, the vendees, Maddox Bros. & Anderson, owned all the land in conflict with the Webb and the Williams surveys, except section 114, which was then owned by North and was conveyed by his deed to Maddox Bros. & Anderson.

"When Maddox Bros. & Anderson conveyed the Williams and Webb surveys to the plaintiff they in the same deed conveyed the land in conflict with the Williams and Webb, and none of the parties, neither Maddox Bros. & Anderson, the plaintiff, nor North, had any notice of the conflict in the surveys.

"On the 18th of March, 1886, plaintiff executed a deed of trust with covenants of general warranty of title, to secure money loaned to it by Francis Smith & Co. and subsequent to this suit the land was sold to Francis Smith & Co. under the deed of trust, in accordance with its terms, to whom a general warranty deed was made August 18, 1894.

"The plaintiff is and was a private corporation, organized by John W. Maddox, F. M. Maddox, and C. E. Anderson, and they own all its stock, and owned all of it when they conveyed to the corporation the land, and were all of its officers when they in person so conveyed in consideration of all the stock of the corporation, and at the time of the institution of this suit they were the sole owners of all the stock.

"No other facts of outstanding title are shown against plaintiff's title under its deed from North, nor has there been any eviction or threat of eviction, except as stated.

"The following questions arise upon the facts stated in the foregoing case, now pending in the Court of Civil Appeals for the Third Supreme Judicial District of the State, which are certified to the Supreme Court of the State for decision:

"1. J. W. and F. M. Maddox and C. E. Anderson being the owners in fee of all the land in conflict with older surveys except what was owned by North, at the time of the conveyance by him to them, there being no eviction or threat of eviction, was there a breach of the covenant of warranty in North's deed to them, upon which suit can be maintained by the corporation, composed as it is by John W. and F. M. Maddox and C. E. Anderson, by whom the land was conveyed to plaintiff, the corporation?

"2. Where the vendee himself owns the superior title to the land conveyed to him by deed with general covenant of warranty of *"the premises,"* is there a breach of the covenant of warranty, such as will

support an action for the breach of the covenant by the covenantee or his vendee?"

The cases in which the vendee has been allowed in this State to defend against or cancel purchase money notes by showing the existence of a superior outstanding title have been decided upon principles of equity. Tarpley v. Poage's Admr., 2 Texas, 139; Cooper v. Singleton, 19 Texas, 260; Woodward v. Rodgers, 20 Texas, 176; Cook v. Jackson, 20 Texas, 209; Demaret v. Bennett, 29 Texas, 263; Smith v. Nolen, 21 Texas, 497. They proceed upon the principles that a court of equity will not ordinarily lend its aid to compel the vendee to perform his contract by paying over the purchase money when it appears that the vendor conveyed him no title. Whether the doctrine is based upon failure of consideration, in which case it would seem to apply whether there be a warranty or not, or whether it is based upon *constructive* breach of warranty, equity assuming that the outstanding title will be asserted and offsetting the note with the warranty to avoid circuity of action, we are not called upon in this case to determine. The rule is conceded not to be in accord with the weight of authority elsewhere (Cooper v. Singleton, 19 Texas, 260), and we are of opinion that it has no application to the case before us, where the deed has been executed by the vendor and the purchase money all paid by the vendee and the suit is afterwards brought on the warranty. This is strictly an action at law, which can not be maintained unless there has been a breach of the warranty under well established legal rules. It has been held in this State that the mere existence of a superior title in another is not a breach of the warranty, the court saying that "inasmuch as the mere existence of a superior title in the real owner does not work an eviction of a covenantee who has entered upon the land, we hardly see how it can evict one who has received a conveyance with warranty, but has made no actual entry." Jones v. Paul, 59 Texas, 41. If the covenantee were to procure the holder of the superior title to evict him, certainly such act would debar him from his action upon the covenant, and we think the same would be true if he were to purchase such title when it had not been asserted, for in each of such cases but for his own act his title might have remained unquestioned until perfected by lapse of time. To the benefit of such contingencies the vendor is entitled as well after as before his conveyance, and the covenantee who has been placed in privity with the title and often in possession of the land will not be permitted to deprive him thereof. There can be no legal eviction or turning out unless and until a superior title has been without the invitation of the covenantee pressed upon him. Jones v. Paul, supra. The warranty in former times could only be broken by an actual *eviction* from the possession, but in modern times the rule has been so far relaxed that an eviction in legal contemplation occurs when the facts are such that it would be useless for the covenantee to attempt to maintain the title conveyed him; e. g., where the holder of the superior title has taken actual possession or threatens suit. If in such cases he yields to a force he can not resist, he is in con-

templation of law *evicted.* But to hold that this is so when he, as in the case before us, discovers that he really owned the superior title before he purchased from his warrantor, would be extending the rule beyond its reason. It could only be applied to such a case by holding that he could evict himself by electing to hold under his superior title upon its discovery. But we have seen that legal eviction can not be predicated upon the mere voluntary act of the covenantee. We are therefore of opinion that there has been no eviction and therefore no breach of the warranty in the case before us. We do not mean to hold that under the facts of this case the vendees of North by proper averments could not have maintained an equitable action, independent of the warranty, based upon fraud, mistake, etc. (O'Connell v. Duke, 29 Texas, 300; Bellamy v. McCarthy, 75 Texas, 293; Daughtrey v. Knolle, 44 Texas, 451); but if so, such cause of action did not pass to the corporation plaintiff herein by their deed to the land as did the covenant of warranty. We therefore answer both questions certified in the negative.

We do not regard the case of Doyle v. Hord, 67 Texas, 621, as in conflict with the conclusion we have reached. The record of that case shows that it was not a suit on the warranty, but an equitable proceeding based upon failure of consideration, and fraud and mistake. It combined the causes of action recognized in the first and last classes of cases cited above. In so far as it sought a cancellation of the note it was based upon the first class, and in so far as it sought to recover a portion of the money paid it was based upon the last class. Therefore the remarks of the learned judge in reference to the breach of the warranty should not be held to have announced the proposition that in an action on a covenant of warranty a breach can be shown by mere proof of the ownership by the covenantee of a title superior to that derived from the covenantor.

The case of Groesbeck v. Harris, 82 Texas, 415, in so far as it allowed a recovery upon the warranty for the "330 acres of the survey No. 3" found to have been in conflict with surveys Nos. 313 and 314, we overrule, as being in direct conflict with the conclusions we have reached in this case and with the principle announced in Jones v. Paul, supra, which case seems to have been overlooked.