## KLEIN

v.

## FIRST NAT. BANK OF CHICAGO.

### No. 6321.

Court of Civil Appeals of Texas.
Amarillo.

Sept. 21, 1953.

Rehearing Denied Oct. 26, 1953.

Singleton & Trulove, Amarillo, for appellant.

Stubbeman, McRae & Sealy, Midland, for appellee.

NORTHCUTT, Justice.

This was an action by appellant, Ed Klein, plaintiff below, to recover title to the minerals in and under a 240 acre tract of land in Section 3, Block BCC Batson, SF 4916 in Oldham County, Texas, as against appellee, First National Bank of Chicago, defendant below. The first part of the petition is a formal action of trespass to try title. Subdivision "a" of the second count of the petition alleges that on or about June 14, 1913, Henry Klein and wife, Hannah Klein, father and mother of the plaintiff (appellant herein) executed a quitclaim deed to the land above mentioned, which deed was intended by the parties as a mortgage. Subdivision "b" of the second count of the petition alleges the instrument dated June 10, 1922, recorded in Vol. 21, Page 350 of the deed records of Oldham County, Texas, deeding the property to Henry Klein was in fact a release of a certain vendors' lien note dated June 14, 1913. The pleadings further allege title by limitation and intention of the parties that the instruments in question were mortgages and releases. Appellant did not plead fraud, mutual mistake, or accident in connection with the making and/or delivering of the instruments in question.

Appellee claims title to the mineral rights here involved by virtue of the provisions in the deed dated April 26, 1922, where the land was deeded to Henry Klein subject to the reservation of all minerals on the property in question with the right to mine the same. Appellant's pleadings allege this instrument was dated June 10, 1922.

At the conclusion of the taking of the testimony and the introduction of evidence in the trial before the jury, and both parties had closed their case, appellee made and presented a motion for an instructed verdict. Such motion was granted by the trial court and judgment rendered for defendant below (appellee herein) that Ed Klein take nothing by his suit as against the defendant (appellee herein) but that the First National Bank of Chicago have and recover of and from Ed Klein the title and possession of the oil, gas and other minerals in, on, and under, and that may be produced from the land in question, from which judgment Ed Klein has perfected his appeal to this Court.

Appellant predicated his appeal upon six alleged points of error. Since all six points of error complained of the action of the trial court in excluding testimony and in directing a verdict for the defendant (appellee herein), we are of the opinion that all six points can be best discussed together.

We are unable to agree with the contention made by appellant. The undisputed record in this case shows that any and all claims the appellant might have to the land in question finally came from his father and mother. Henry Klein, father of Ed Klein, purchased the land in question on February 7, 1911, and the same was deeded to him. Henry Klein and his wife, Hannah Klein, moved upon the land in question and took with them Ed Klein and their other children and remained there as the family of Henry and Hannah Klein up until the death of Henry Klein. On June 14, 1913, Henry and Hannah Klein deeded the land in question to one Harvey T. Weeks. By certain instruments, the property was later transferred to Union Trust Company, Trustee. On April 26, 1922, Union Trust Company, Trustee, deeded the property to Henry Klein and in that deed reserved the mineral rights in the Union Trust Company. In this trial the parties stipulated that all of the rights, title, and interest in said tract of land held by the Union Trust Company, Trustee, had legally passed to and

vested in the First National Bank of Chicago, Trustee.

■ There is no competent evidence in this record that appellant, Ed Klein, who lived with his father and mother as a part of their family, ever had such exclusive, continuous, visible, and hostile possession of the land in controversy as was necessary to vest in him title by adverse possession. We feel that it is so well established that before he could hold title by adverse possession that this would have been necessary that no citations of authority are necessary.

After the death of Henry Klein, Ed Klein et al. on June 29, 1932, deeded the property in question to his mother, Hannah Klein, which deed recited:

"(The interest in the land herein conveyed is one half undivided interest, the same being derived as a community interest, from grantors father, Henry Klein, deceased; the other half interest in said land is now owned by the grantors mother, Hannah Klein, the grantee herein, which is also her community interest in said land, and the purpose of this deed is to vest the full legal title to said land in grantor's mother, Hannah Klein.)"

If Ed Klein owned the property by limitation, his mother would not have had any community interest in the land. This deed is an acknowledgment on the part of Ed Klein that he always recognized that his father and mother were owners of the property and by this undisputed record he was not claiming it as his own under the Statute of Limitation but claiming title through the wills of his mother and brother, A. C. Klein.

■ Appellant's right to the land in question was subject to any limitations existing in the title of Henry and Hannah Klein or A. C. Klein. There is no contention made in this record that the reservation of the minerals mentioned in the deed of April 26, 1922, was placed in that instru-

ment by mutual mistake, fraud, or accident. All that appellant claims is that the instrument was a release of a vendor's lien. If a vendor's lien existed, this instrument dated April 26, 1922 released any claim that the lien holder might have had as to any vendor's lien. No contention is made that there has ever been any claim on the part of appellee or any other person that they still hold a vendor's lien which appellant claims this instrument released.

■ The deed dated April 26, 1922, was accepted and recorded by Henry Klein and he thereby accepted its terms. By this instrument there was a severance of the mineral estate from the surface estate and the appellant could not properly claim adverse possession of the minerals. The Supreme Court of this State, in the case of Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 585, 136 A.L.R. 626, stated:

"It follows from the decision last discussed and the other authorities above cited that, since the parties to the Greene-Garrett deed are bound by the terms of their contract, it was not necessary, in order to make the reservation in the deed effective in favor of Greene and those holding under him and against Garrett and those holding under him, that good title to the land be shown in Greene at the time when the deed was executed. The deed, as between the parties to it, having worked a severance of the mineral estate from the surface estate, such possession of the surface as was exercised by Garrett, and those claiming under him, after the execution of the deed was not adverse possession of the minerals. Elliott v. Nelson, 113 Tex. 62, 251 S.W. 501; Rio Bravo Oil Company v. McEntire, 128 Tex. 124, 136, 95 S.W.2d 381 [Id., 128 Tex. 124], 96 S.W.2d 1110; Luse v. Boatman, Tex.Civ.App., 217 S.W. 1096, application for writ of error refused."

The instrument dated April 26, 1922, was a contractual obligation and used by the parties herein to prove their record title. They can not be heard to say they are not bound by its terms. Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599, 603, stated:

"Since the Ford deed was not void, we think its effect is settled by Greene et al. v. White et al., 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626. Although they did not sign the deed, grantees Adams accepted it and subsequently used it to their advantage; so they and petitioners, their privies, were concluded by its recitals and by the reservations therein in favor of the Duncan estate and its heirs, the respondents. Moreover, the deed's recitals that it conveyed the surface estate and only one half the mineral estate and reserved one half the mineral estate to Ford and to the heirs and devisees of William Duncan, deceased, were contractual provisions that defined 'the character and extent of the ownership and interests' of both grantors and grantees in the land.

"It is true that this court said in Greene et al. v. White et al., supra, that if at the time the deed in question there was executed the grantees held title by limitation, the deed from grantors (reserving the mineral estate) was wholly ineffectual. But that holding was grounded on the theory that the land was the homestead of the grantees and, as a matter of course, the instrument could not deprive them of any interest therein if they already owned it whether by limitation or otherwise, since they did not sign and acknowledge it as the law requires in any conveyance of the homestead. But here we have no such question; it is in no way claimed that the Duncan Survey was the homestead of the grantees Adams or any of them when they accepted the deed from Ford.

"The grantees not only accepted the deed but they recorded it; they used it in subsequent litigation to prove record title in themselves, and one of them testified that they bought the land by that deed in 1906 and never owned it before; and they referred to it

thereafter in conveyances affecting the land. Therefore, neither they nor petitioners as their heirs and successors in title can now be heard to say that they are not bound by its contractual obligations."

From what we have stated, we are of the opinion that the trial court properly disposed of this case. We therefore overrule all of the assignments of error presented by appellant and affirm the judgment of the trial court.